23 Cal.Rptr.3d 816 (2005)
126 Cal.App.4th 364
David VISHER et al., Plaintiffs and Respondents,
v.
CITY OF MALIBU, Defendant and Appellant.
No. B173471.
Court of Appeal, Second District, Division 8.
February 1, 2005.
*817 Jenkins & Hogin, Christi Hogin, Manhattan Beach, and Gregg Kovacevich for Defendant and Appellant.
David Visher and Sandra Visher, in pro. per., for Plaintiffs and Respondents.
RUBIN, Acting P.J.
The City of Malibu appeals from the trial court's refusal to dismiss David and Sandra Visher's petition for writ of mandate as a "Strategic Lawsuit Against Public Participation." Malibu also appeals from the trial court's order awarding the Vishers the attorneys' fees they incurred in opposing Malibu's motion to dismiss. We affirm the trial court's orders.

FACTS AND PROCEDURAL BACKGROUND
People worldwide know that the City of Malibu lies on the California coast. Fewer people know, however, that under California's Coastal Act a beachside city like Malibu cannot issue coastal development permits (CDP) to city property owners until it adopts a local coastal plan (LCP). For the entire nine years of its existence as a city following its incorporation in 1991, Malibu refused to adopt a LCP. In 2000, the Legislature authorized the California Coastal Commission to prepare a LCP for Malibu. (Pub. Resources Code, § 30166.5.) Immediately upon the Coastal *818 Commission's issuance of the LCP, city residents submitted a petition to Malibu officials demanding to subject the LCP to a local referendum. Putting the LCP on hold, Malibu filed a petition for writ of mandate against the Coastal Commission seeking a declaration that the referendum suspended the LCP and restored to the commission the burden of processing Malibu CDPs. (See City of Malibu v. California Coastal Comm. (2004) 121 Cal.App.4th 989, 18 Cal.Rptr.3d 40, for background on dispute between Malibu and the Coastal Commission.)
Malibu's efforts in the trial court failed. The trial court held Malibu could not lawfully subject a state-enacted LCP to a local referendum, and ordered Malibu to process the CDPs of Malibu residents. Malibu filed its notice of appeal to us in June 2003. By a published decision in August 2004, we affirmed the trial court. (City of Malibu v. California Coastal Comm., supra, 121 Cal.App.4th 989, 18 Cal.Rptr.3d 40.)
While Malibu's appeal was pending, Malibu residents David and Sandra Visher asked the city in July 2003 to issue a CDP to let them build a home on their vacant lot. Malibu rejected their request, reasoning that honoring it would prejudice its appeal before us because it would constitute voluntary compliance with the trial court's order directing Malibu to process CDPs. (See Ryan v. California Interscholastic Federation (2001) 94 Cal.App.4th 1033, 1040, 114 Cal.Rptr.2d 787 [voluntary compliance with court order waives right to appeal from that order].) Consequently, in August 2003 the Vishers filed a petition for writ of mandate seeking to force Malibu to process their CDP.
Malibu moved to dismiss the Vishers' petition, arguing it was a Strategic Lawsuit Against Public Participation (SLAPP) under the anti-SLAPP statute (Code Civ. Proc., § 425.16, subd. (b)(1).) Alleging the Vishers had filed their petition in response to Malibus exercising its right to appeal its loss against the Coastal Commission, the city asserted the petition satisfied the statutory definition of a SLAPP as a "cause of action against a person[1] arising from any act of that person in furtherance of the persons right of petition ... in connection with a public issue...."
The Vishers opposed Malibus motion to dismiss. They argued their petition did not arise from Malibu's exercising its right to appeal; rather, the Vishers argued, its purpose was to force Malibu to issue a CDP so they could build their home. The trial court agreed and overruled Malibu's motion to dismiss. The Vishers thereafter requested their attorneys fees, as permitted by the anti-SLAPP statute, for successfully opposing Malibu's motion to dismiss, which they argued was frivolous and brought solely for the purpose of delay. The trial court awarded them $35,000 in fees. Malibu appeals from both the order overruling its motion to dismiss and the fee award.

STANDARD OF REVIEW
We independently review the trial court's denial of Malibu's motion to dismiss. (Santa Monica Rent Control Bd. v. Pearl Street, LLC (2003) 109 Cal.App.4th 1308, 1316-1317, 135 Cal.Rptr.2d 903; *819 Kashian v. Harriman (2002) 98 Cal. App.4th 892, 906, 120 Cal.Rptr.2d 576 [same].) We review the fee award for abuse of discretion. (Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist. (2003) 106 Cal.App.4th 1219, 1248, 132 Cal.Rptr.2d 57.)

DISCUSSION
A strategic lawsuit against public participation, also known as a SLAPP, aims to prevent defendants from exercising their constitutionally protected rights of free speech and petition. Rather than necessarily hoping to win the lawsuit, a party who files a SLAPP tries to wear down the other side by forcing it to spend time, money, and resources battling the SLAPP instead of the protected activity. The prototypical SLAPP is filed by a well-heeled land developer trying to silence a neighborhood organization that protests the developer's plans. (Wilcox v. Superior Court (1994) 27 Cal.App.4th 809, 815, 33 Cal. Rptr.2d 446, disapproved on other grounds in Equilon Enterprises v. Consumer Cause, Inc. (2002) 29 Cal.4th 53, 68, fn. 5, 124 Cal.Rptr.2d 507, 52 P.3d 685.)
The trial court found the Vishers' petition arose from their desire to get a CDP to build their home. Their petition was not retaliation for Malibu's appeal from its loss against the Coastal Commission, nor was the petition meant to draw Malibu away from its appeal against the commission. Indeed, the court observed the Vishers' lawsuit could have no effect on Malibu's appeal before us. The court thus found the Vishers' petition was not a SLAPP, and refused to dismiss their petition.
Malibu contends the court erred because the petition arose from Malibu's appeal, which was a protected activity. (Cf. Mattel, Inc. v. Luce, Forward, Hamilton & Scripps (2002) 99 Cal.App.4th 1179, 1188, 121 Cal.Rptr.2d 794 [filing lawsuit protected activity]; accord Kashian v. Harriman (2002) 98 Cal.App.4th 892, 908, 120 Cal.Rptr.2d 576 [courts take expansive view of litigation related activities].) In support, Malibu cites the anti-SLAPP statute's definition of the type of activity it protects: "As used in this section, act in furtherance of a persons right of petition ... includes ... any written or oral statement or writing made before a ... judicial proceeding...." (Code Civ. Proc., 425.16, subd. (e)(1).) According to Malibu, it had the right to litigate, and appeal, its obligation to process CDPs. If it processed the Vishers' CDP while its appeal was pending, it risked undermining its appeal. Thus, its refusal to process the CDP furthered its protected right to petition, and the Vishers' lawsuit, which challenged Malibu's refusal, arose from Malibu's right to petition.
We are not persuaded, and find City of Cotati v. Cashman (2002) 29 Cal.4th 69, 124 Cal.Rptr.2d 519, 52 P.3d 695 (Cotati), helpful in illustrating why. In that decision, the City of Cotati imposed rent control on mobile home parks, which the park owners argued was unconstitutional. The owners therefore challenged the rent control ordinance in federal court. Claiming the ordinance was constitutional, the city filed a suit in state court seeking a declaration that the ordinance was lawful. The park owners moved to dismiss the city's state court lawsuit, arguing it was a SLAPP because it arose from the owners' federal lawsuit. (Id. at pp. 72-73, 124 Cal.Rptr.2d 519, 52 P.3d 695.)
Our Supreme Court disagreed. It distinguished between the competing state and federal lawsuits and the controversy underlying those suits. The Supreme Court noted that although the city filed its state court complaint after the owners filed their federal action, both lawsuits *820 tested the constitutionality of the rent control ordinance. Thus, the city's lawsuit did not "arise from" the owner's constitutionally protected right to file their federal lawsuit, but instead from the ordinance itself. The Supreme Court explained, the "distinction City invokes between Owners' federal court action on the one hand and the controversy underlying that action (as well as City's own action) on the other is not an ephemeral or merely formalistic one." (Cotati, supra, 29 Cal.4th at p. 80, 124 Cal.Rptr.2d 519, 52 P.3d 695.) A "dispute exists between the parties over the constitutionality of [the rent control ordinance]. And just as Owners' lawsuit itself was not the actual controversy underlying Owners' request for declaratory relief in federal court, neither was that lawsuit the actual controversy underlying City's state court request for declaratory relief. Rather, the actual controversy giving rise to both actions  the fundamental basis of each request for declaratory relief  was the same underlying controversy respecting City's ordinance. City's cause of action therefore was not one arising from Owners' federal suit. Accordingly, City's action was not a [SLAPP]." (Ibid., fn. omitted.)
Likewise here. The Vishers' petition arose from Malibu's refusal to process CDPs. It did not arise from Malibu's lawsuit against the Coastal Commission.[2] Indeed, Malibu's refusal to process CDPs tellingly predated both its lawsuit against the Coastal Commission and the Vishers' lawsuit against Malibu. While the onset of litigation may have given Malibu an additional reason not to process the Vishers' CDP, it was Malibu's refusal to process CDPs of which the Vishers complained, not Malibu's engagement in the protected activity of suing the Coastal Commission. As in Cotati, both lawsuits grew from the same single controversy, and neither was an offshoot of the other.
In holding that the trial court correctly refused to dismiss the Vishers' petition, we do not disparage Malibu's right to have appealed its loss against the Coastal Commission. That Malibu had such appellate rights does not, however, make the Vishers' petition a SLAPP. We see nothing in the record suggesting the Vishers' quest for a CDP was a sideshow or diversion from anything other than what they truly sought  a permit to develop their property. As one court noted, "`the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [Citation.] Moreover, that a cause of action arguably may have been "triggered" by protected activity does not entail it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity. [Citations.]'" (Gallimore v. State Farm Fire & Casualty Ins. Co. (2002) 102 Cal.App.4th 1388, 1397-1398, 126 Cal.Rptr.2d 560.) Malibu's mistake in condemning the Vishers' petition as a SLAPP did not mean Malibu was defenseless *821 in preserving its appeal against the Coastal Commission. For example, Malibu could have moved to stay the Vishers' petition pending the appeal. Or, it could have litigated their petition, where it might have won or, if it had lost, filed another appeal with no detriment to its appeal against the Coastal Commission. What it could not do was seek the petition's summary dismissal as a SLAPP.

Sanctions Against Malibu
The anti-SLAPP statute allows a trial court in its discretion to award attorneys' fees against a party that files a frivolous motion to dismiss. (Code Civ. Proc., § 425.16, subd. (c).) Here, the trial court found Malibu's motion to dismiss was frivolous and awarded the Vishers $35,000 in fees.
Malibu contends its motion was not frivolous and was not brought solely for the purpose of delay, and thus, was not in bad faith. (Moore v. Shaw (2004) 116 Cal.App.4th 182, 199, 10 Cal.Rptr.3d 154; Decker v. U.D. Registry, Inc. (2003) 105 Cal.App.4th 1382, 1389, 129 Cal.Rptr.2d 892.) It contends it raised a colorable argument that the Vishers' petition alleged causes of action for acts in furtherance of Malibu's right to petition, making their petition vulnerable to an anti-SLAPP motion to dismiss. The trial court disagreed. We find no abuse of discretion in its decision.
First, Malibu had no reasonable basis for asserting the Vishers' petition "arose from" Malibu's appeal involving the Coastal Commission. The Vishers were not parties to the lawsuit between Malibu and the Coastal Commission. They could not affect the course of the appeal and their desire for a CDP for their home existed independently of any dispute between Malibu and the Coastal Commission. Regardless of whatever reasonable arguments Malibu could make in its litigation against the Coastal Commission about a local referendum's effect on a state-enacted LCP, the sanctions order here involved the reasonableness of Malibu's resorting to a SLAPP motion to rid itself of the Vishers' petition. As we held above, Malibu completely failed on that point. Based on Malibu's inability to plausibly show the Vishers' petition arose from the appeal involving the Coastal Commission, the trial court had a sufficient basis to conclude Malibu's purpose in moving to dismiss was frivolous and in bad faith. (Shelton v. Rancho Mortgage & Investment Corp. (2002) 94 Cal.App.4th 1337, 1346, 115 Cal. Rptr.2d 82 ["trial court may infer subjective bad faith from the pursuit of a frivolous tactic"].)[3]

DISPOSITION
The orders are affirmed. Respondents to recover their costs on appeal.
We concur: BOLAND and FLIER, JJ.
NOTES
[1] The anti-SLAPP statutes treats a government entity as a "person" entitled to the statute's protection. (Mission Oaks Ranch, Ltd. v. County of Santa Barbara (1998) 65 Cal. App.4th 713, 730, 77 Cal.Rptr.2d 1, disapproved on other grounds in Briggs v. Eden Council for Hope & Opportunity (1999) 19 Cal.4th 1106, 1123, fn. 10, 81 Cal.Rptr.2d 471, 969 P.2d 564; Bradbury v. Superior Court (1996) 49 Cal.App.4th 1108, 1114-1115, 57 Cal.Rptr.2d 207.)
[2] See Cotati, supra, 29 Cal.4th at page 78, 124 Cal.Rptr.2d 519, 52 P.3d 695 ("[T]he statutory phrase `cause of action ... arising from' means simply that the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech."); compare Navellier v. Sletten (2002) 29 Cal.4th 82, 92, 124 Cal.Rptr.2d 530, 52 P.3d 703 ("The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's activity that gives rise to his or her asserted liability  and whether that activity constitutes protected speech or petitioning.").
[3] Notwithstanding our conclusion that the trial court did not abuse its discretion, we exercise our discretion and deny the Vishers' motion for sanctions in this court.